UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICIO EDMUNDO VALOIS-PEREZ, | ) ) ) | CASE NO.  3:21-cv-1149 |
| Petitioner, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| WARDEN KENNETH BLACK, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | ) ) | |

Before the Court is a Petition filed in this Court by Petitioner Mauricio Edmundo Valois-Perez seeking a writ of habeas corpus.  28 U.S.C. § 2254.  (Doc. No. 1.)  Warden Kenneth Black filed a Return of Writ (Doc. No. 11), and Petitioner filed a Traverse (Doc. No. 13).  For the following reasons, the Petition is DENIED.

I.      **Background**

Petitioner is incarcerated for shooting and killing his wife.  The Court recounts facts and procedural history that are relevant to the Petition.

A.      **Criminal Charges and Pretrial Motions**

On December 16, 2016, a grand jury in Sandusky County returned an Indictment against Petitioner on one count of aggravated murder (Ohio Rev. Code § 2903.01(A)) with a firearm specification (Count 1), and one count of murder (*Id.* § 2903.02(A)) with a firearm specification. (Count 2).  (Doc. No. 11-1 at 77-78.)[1]  Both counts referred to the killing of

---

[1] Under Ohio law, a murder "purposely cause[s] the death of another," *id.* § 2903.02(A), whereas an aggravated murder "purposely, and with prior calculation and design, cause[s] the death of another," *id.* § 2903.01(A).

1

Petitioner's wife.  The trial court appointed attorney Esteban Callejas as defense counsel.  (*Id.* at 129.)

On January 3, 2017, Petitioner, through counsel, filed a plea of Not Guilty by Reason of Insanity.  (*Id.* at 82.)  He requested that the State cover the cost of the psychiatric evaluation.  (*Id.* at 85.)  The trial court granted that motion.  (*Id.* at 89.)  On April 27, 2017, Petitioner through counsel filed a motion asking the trial court to order a second psychiatric evaluation with a specified professional at the State's expense.  (*Id.* at 91.)  The trial court granted that motion, too.  (*Id.* at 95.)

On June 13, 2017, the trial court found Petitioner competent to stand trial.  (*Id.* at 97.)  In its Order, the trial court stated that "[b]oth reports concluded that this Defendant is capable of understanding the nature and objective of the proceedings against him and of assisting in his defense.  Defendant Counsel Esteban Callejas did not object to the conclusions reached by the evaluators."  (*Id.*)

## B. Guilty Plea

On July 20, 2017, Petitioner entered a plea of guilty to charge of murder in Count Two of the Indictment, including a three-year firearm specification.  Ohio Rev. Code § 2901.02(A).  (Doc. No. 11-1 at 100-03.)  The written plea agreement indicated that Petitioner waived a pre-sentencing investigation.  (*Id.* at 100.)

The plea agreement further provided:  "My attorney and the judge have advised me and I understand" followed by a list of important facts and considerations related to the plea.  (*Id.* at 100-03.)  Among those, Petitioner underlined a section indicating that he was not a U.S. citizen.  (*Id.* at 101.)  That section of the plea agreement included the following:

> If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when

2

applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(*Id.*) Petitioner also checked a section of the document indicating: "I understand that a plea of guilty is a complete admission of my guilt." (*Id.* at 102.) In exchange for the plea, the State agreed to dismiss Count One (aggravated murder) at sentencing. (*Id.*)

On July 20, 2017, the trial court sentenced Petitioner to fifteen (15) years to life in prison for murder, plus three (3) consecutive years for the firearm specification, for an aggregate prison term of eighteen (18) years to life. (*Id.* at 105.) This entry was journalized on July 25, 2017. (*Id.*) On or around September 19, 2017, trial court entered a *nunc pro tunc* order specifying the word "Life" in the sentencing journal entry to reflect that the sentence was 15 years to Life in prison for murder, with the mandatory 3-year sentence for the firearm specification for an aggregate sentence of 18 years to Life. (*Id.* at 109.)

Valois-Perez did not file a direct appeal. (*See* Doc. No. 11 at 46.)

## C. Motion to Withdraw the Guilty Plea

Over a year later, on November 19, 2018, Petitioner moved the trial court *pro* se to withdraw his guilty plea pursuant to Criminal Rule 32.1. (Doc. No. 11-1 at 112-26.) Under that state law rule, a "motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Ohio R. Crim P. 32.1.

Petitioner relied on "the ineffectiveness of counsel as the basis for his motion to withdraw his plea." (Doc. No. 11-1 at 113.) He argued that "counsel's performance was deficient because he failed to advi[s]e him of possible strategies if he desired to go to trial, specifically a jury

3

instruction on the lesser-included offense of Voluntary Manslaughter." (*Id.*)  "Defendant argues that there is enough evidence in this case to establish and determine sufficient evidence of serious provocation by the victim." (*Id.*)[2]  Petitioner's motion laid out facts and evidence to explain why his case was suited for voluntary manslaughter rather than murder.  (*Id.* at 113-26.)

Petitioner filed a sworn affidavit under penalty of perjury as support for his motion. (Doc. No. 11-1 at 125-26.)  In it, he attested to the following facts:

> 1. My English is not very good. I'm not fluent in English.  Throughout the entire proceedings of this case I needed an interpreter.  I still need an interpreter.
>
> 2. The State's theory of this case is that I purposely and with prior calculation and design I shot and killed my wife Gabriella.
>
> 3. I have consistently denied killing my wife purposely and with prior calculation and design. I denied this theory now.
>
> 4. The night of the incident, I was drinking beers with my friend Victor and his wife Barbarita Martinez, when I began receiving emoji messages by my wife Gabriella questioning where I was at and who I was with.  She started accusing me of liking other women including her sisters.
>
> 5. Once I arrived home, she continued yelling and screaming at me accusing me of being with other women.  I was drunk, tired and stressed out.  She consistently kept accusing me of liking skinnier women.  She accused me of everytime [*sic*] I went out by myself it was because I was being unfaithful with other women.
>
> 6. All these consistent accusations on the night of the incident caused me to relive her infidelity and the rumors going around that our second child might not be my child.
>
> 7. The night of the incident she did admit her sexual infidelity but she claimed that she had been forced and that she didn't want to. This made me so mad I called her a "fucking whore."  Her admission made me believe that perhaps our second child might not be mine after all.

---

[2] Ohio law includes a first-degree felony of voluntary manslaughter:   "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . . ."  Ohio Rev. Code § 2902.03(A).

8. My counsel was not effective because he failed to advise me that If I wished to go to trial, I could have asked for a jury instruction on the lesser-included offense of Voluntary Manslaughter.

9. I assert that after my wife Gabriella admitted to being sexually unfaithful after lying to me for over a year coupled with the thought that of her claim that she was forced to have sex along with the rumors that our second child might not be mine, it incited me into a sudden passion and a fit of rage.

10. I would like the opportunity to tell a jury my side of the story in my own words. I never planned to kill my wife Gabriella.  It never crossed my mind.  I am not a cold blooded murderer.

11. I assert that my guilty plea was not entered knowingly because of my counsel's deficient performance, I waived my Constitutional right to a jury trial without knowing that I could request a jury instruction on the lesser included offense of Voluntary Manslaughter and have a jury determine whether I possessed the requisite intent to commit purposeful murder or whether I acted in a sudden passion or in a fit of rage provoked by the words of my wife Gabriella.

12. I would like to have my plea vacated and the judgment of conviction and I would like to proceed to trial with court appointed counsel at State's expense.

(Doc. No. 11-1 at 125-26.)

The State opposed the motion.  (*Id.* at 128-31.)  The State noted that Petitioner pleaded guilty following "extensive discussions between counsel, the court and the victim's family." (*Id.* at 129.)  The State offered arguments why the motion should be denied and why a lesser charge of voluntary manslaughter should not apply.  (*Id.* at 130-31.)  The State also addressed Petitioner's ineffective assistance of counsel argument, as excerpted below.

To prevail on this claim, the defendant must meet the test for ineffective assistance of counsel established in *Strickland v. Washington*, (1984), 466 U.S. 668.  The *Strickland* test was applied and adapted to guilty pleas in *Hill v. Lockhart* (1985), 474 U.S. 52.  *Hill* stated a two pronged test to determine ineffective assistance of counsel during guilty pleas.  First, the defendant must show that counsel's performance was deficient.  Second, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.

The defendant hasn't offered any proof that his counsel was ineffective and has failed to meet his burden of proof for the first prong of the test.  The guilty plea in this case was audio recorded by the court and the plea hearing complied with

5

the requirements of Criminal Rule 11.  The plea was entered into to avoid the
potential penalties, including life without parole, that the defendant was facing
if convicted of aggravated murder. The defendant is now claiming that Esteban
Callejas didn't discuss the potential jury instruction for voluntary manslaughter
with the defendant but has failed to offer any evidence that would support that
claim other than his own self-serving affidavit.

(Doc. No. 11-1 at 130.)  The State further argued that Petitioner had not met his initial burden to

come forward with affidavits or other evidence.

The defendant fails to meet the second prong of *Hill* .The defendant's argument
is that he would not have pled guilty to murder if he was aware of the jury
instructions for voluntary manslaughter. His discussion totally ignores the
benefit he received. By pleading guilty to murder, he avoided the more severe
penalties for aggravated murder.

The defendant has offered partial police and psychological reports as "evidence"
that a voluntary manslaughter instruction would have been given by the trial
court. He also falsely claims that the victim was the aggressor in the quarrel
between Gabriella Rojas and the defendant.

This is not an incident in which the defendant suddenly found Gabriella Rojas
in the arms of another man.

\* \* \*

The defendant's Motion to Withdraw his guilty plea is insufficient to warrant a
hearing. He has not provided the court with any evidence, other than a self-
serving affidavit, that his counsel's performance was deficient or that he would
have proceeded to trial if he was aware of the possibility of a voluntary
manslaughter instruction.

(*Id.* at 130-31.)

On December 14, 2018, the trial court denied the motion to withdraw the guilty plea.

The colloquy with the defendant at his plea hearing covered all the areas required
by Criminal Rule 11, as well as addressing whether the defendant was satisfied
with his counsel.  He was.  He was also provided with an interpreter at his plea
hearing, to wit, Maria Garcia.  He acknowledged that his plea was of his own
free will and choice.  It was explained to him that in return for his plea, the state
would dismiss the aggravated murder count of the indictment at sentencing.

The court finds that this Defendant understood the consequences of his plea,
weighed the risks of going to trial on an aggravated murder charge, and
determined that his best interests were served by pleading as he did.

6

The court finds that no manifest injustice has occurred.

(Doc. No. 11-1 at 135.)

### D.      Court of Appeals

On January 10, 2019, Valois-Perez filed a *pro se* Notice of Appeal to the Ohio Sixth District Court of Appeals challenging the denial of his motion to withdraw the guilty plea.  (*Id.* at 138.)  Petitioner moved for the appointment of counsel, which was granted.  (*Id.* at 142, 148.)  The court appointed attorney Karin Coble.  (*Id.* at 148.)

Petitioner's counsel moved to supplement the record on appeal to include a statement of the evidence from the plea and sentencing hearing.  (Doc. No. 11-1 at 151-53.)  Counsel certified that no transcripts had been prepared.  (*Id.* at 152.)

On April 30, 2019, appointed counsel filed a motion to supplement the record.  The parties submitted a joint statement under Ohio Appellate Rule 9.  Rule 9(C) describes a "[s]tatement of the evidence or proceedings when no recording was made, when the transcript of proceedings is unavailable, or when a recording was made but is no longer available for transcription."  Ohio App. R. 9(C).  "In lieu of the record on appeal," Ohio Appellate Rule 9(D) permits the filing of a joint statement of what occurred in the trial court, which Petitioner's counsel and the State did in this consolidated appeal.  (*See*  Doc. No. 11-1 at 226-27.)

On May 15, 2019, counsel filed a separate motion for a delayed appeal challenging Petitioner's July 25, 2017 conviction and sentence.  (*Id.* at 157-59.)  The motion indicated counsel's discovery of additional appellate issues after her appointment.

> As cause, Defendant-Appellant intends to raise issues regarding his guilty plea, as there are issues with the trial court's responsibility to give statutory immigration warnings and with the available translator.  He also intends to raise issues with the imposition of appointed counsel fees and costs.

(*Id.* at 158.)

Counsel asked that the appeal be consolidated with the pending appeal concerning the denial of the motion to withdraw his guilty plea. (*Id.*)

On June 19, 2019, the Court of Appeals granted the motion to allow the delayed appeal and consolidated the two appeals.  (*Id.* at 162-66.)  In his appellate brief, Petitioner raised the following assignments of error:

> [1.]   The trial court violated Mr. Perez's substantive right to receive statutory immigration warnings at his plea hearing, rendering his guilty plea unknowing, involuntary, and unintelligent.
>
> [2.]   The trial court abused its discretion in denying Mr. Perez's motion to withdraw his guilty plea based on ineffective assistance of counsel without an evidentiary hearing.

(*Id.* at 172.)

On August 26, 2019, the Court of Appeals granted appellate counsel's motion to supplement the record.  (*Id.* at 226-27.)

On September 10, 2019, the Court of Appeals *sua sponte* held that the trial court's July 25, 2017 conviction and sentence order, along with the September 18, 2017 *nunc pro tunc* order did not comport with Ohio rules of criminal procedure for a final judgment in a criminal case (*i.e.,* because one judgment order must include both a defendant's guilt and sentence).  (*Id.* at 230-33.))  The court did not vacate the sentence imposed.  Instead, the appellate court temporarily stayed proceedings in the pending consolidated appeal to enable the trial court to prepare and journalize a single conforming final judgment order.  (*Id.* at 232.)

On September 12, 2019, the trial court entered a revised judgment entry to satisfy the rules for a final appealable order.  (*Id.* at 235-36.)  On October 8, 2019, Petitioner filed an amended notice of appeal to reference the revised final judgment order.  (*Id.* at 238-39.)

 On July 17, 2020, the Ohio Court of Appeals affirmed the judgments of the trial court. (*Id.* at 245-57.)  "Complicating our review of this matter is the fact that no transcripts of the

8

relevant proceedings exist; the parties submitted a joint statement to that effect under App. R. 9(D)." In overruling Petitioner's first assignment of error concerning immigration warnings, the appellate court found that –

> because appellant failed to file a motion under R.C. 2943.031(D) in the trial court, he is not entitled to the presumption of prejudice under R.C. 2943.031(E). Again, our review is limited to a Crim. R. 11 substantial compliance analysis.
>
> In the present case, we find that there was not a complete failure to comply with R.C. 2943.031. The written and signed plea form recites the language of R.C. 2943.031(A) and indicates that appellant was advised thereof by his attorney and the judge. We further find that appellant has failed to demonstrate a prejudicial effect stemming from any failure to substantially comply with R.C. 2943.031.

(Doc. No. 11-1 at 253 (citations omitted).)[3]

In overruling Petitioner's second assignment of error, the appellate court determined:

> The distinction between a presentence and post-sentence motion to withdraw a plea is significant, as different standards apply as to both ruling on the motion and whether or not a hearing is required on the motion. A presentence motion to withdraw a plea is to be liberally granted, and requires a hearing on the matter to determine "'whether there is a reasonable and legitimate basis for the withdrawal of the plea.'" *State v. Matthews*, 6th Dist. Wood No. WD-10-025, 2011-Ohio-1265, ¶ 19, quoting *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), paragraph one of the syllabus.
>
> However, a post-sentence motion to withdraw a guilty plea is subject to a much higher burden; the plea will only be set aside to prevent a manifest injustice. Crim. R. 32.1. Further, a post-sentence motion only requires a hearing if the defendant alleges facts that, if taken as true, would require the court to permit withdrawal of the plea. *Matthews* at ¶ 30.

(*Id.* at 253-54.)

---

[3] An Ohio trial court must "address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty . . . may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'" Ohio Rev. Code § 2943.031(A).

The court noted "that voluntary manslaughter is not a lesser-included offense of murder; rather, it is an inferior offense which the court may instruct the jury on after a showing of sufficient provocation." (*Id.* citing *State v. Shane*, 590 N.E.2d 272 (Ohio 1992).) In reviewing the decision below, the appellate court considered whether "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." *Id.*

> In examining whether a voluntary manslaughter instruction should have been given, we apply the same test utilized when determining whether an instruction on a lesser-included offense should have been given. An instruction on voluntary manslaughter is appropriate when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter.

*Id.* (quotation and citations omitted).

The appellate court rejected Petitioner's motion to withdraw his plea because his version of events did not show the requisite serious provocation by the victim.

> Assuming that the issue is properly raised in a Crim. R. 32.1 post-sentence motion, we cannot say that the trial court abused its discretion when it denied appellant's motion without first conducting a hearing. The materials attached to appellant's motion clearly indicate that appellant's explanation of the shooting was that it was accidental. Appellant told police:
>
> Mauricio reported that he thought that he had taken all of the rounds out but one was left. Mauricio explained that he put the magazine into the pistol and started racking the slide to eject the rounds. Mauricio reported that he thought that he had taken all the rounds out but one was left. * * * Mauricio reported that Gabriella was provoking him but he didn't want that because she was the mother of his three children. Mauricio reported that he counted the bullets when he ejected them and thought that the gun was empty. Mauricio reported that he decided to "play with" Gabriella. Mauricio reported that when he was taking the bullets out Gabriella was downstairs in the living room. Mauricio reported that after the gun went off he just dropped the gun, then called Gabriella's father and requested that he come and get the children because he was going to kill himself with it.
>
> Accepting appellant's account of the incident as true, it does not meet the elements of voluntary manslaughter which requires that the state prove that a defendant caused the death of another while under the influence of sudden

10

> passion or rage brought on by serious provocation.  R.C. 2903.03(A).  Thus, the
> instruction was neither warranted nor was counsel ineffective by failing to
> advise appellant on its availability.  Further, the trial court did not err in denying
> the motion without first conducting a hearing.

(*Id.* at 255.)[4]  The court ordered Petitioner to pay the costs of the appeal.  (*Id.*)

### E.    Ohio Supreme Court

On August 12, 2020, Petitioner filed *pro se* a Notice of Appeal with the Ohio Supreme

Court.  (*Id.* at 258-92.)  In his memorandum in support of jurisdiction, he raised the following

propositions of law:

I.      Trial court's failure to comply with R.C. 2943.031(A) is not cognizable in
this direct appeal.

II.     The presumption of prejudice entitlement under R.C. 2943.031(E) applies
on all direct appeals.

III.    Trial counsel's performance was deficient because he failed to advise
Appellant of potential jury instructions if Appellant elected to proceed to
trial, in violation of Appellant's Sixth and Fourteenth Amendments rights
under the U.S. Constitution.

(Doc. No. 11-1 at 263.)

To be clear, propositions of law I and II in the Supreme Court appeal were predicated on

the presumed failure of the trial court to conduct an immigration-related colloquy as required by

Ohio Rev. Code § 2943.031(A).  Proposition of law III was predicated on the same basis as

Petitioner's initial trial court motion to withdraw his guilty plea, namely that trial counsel's

performance left Petitioner unaware that he could request the trial court to instruct the jury on the

lesser offense of voluntary manslaughter.

---

[4] This Court notes that voluntary manslaughter under the Ohio Code must be "brought on by
serious provocation *occasioned by the victim* that is reasonably sufficient to incite the person into
using deadly force."  Ohio Rev. Code § 2903.03(A) (emphasis added).

On October 23, 2020, previously appointed counsel Attorney Karin Coble filed an appearance in the Ohio Supreme Court.  (Doc. No. 11-1 at 294-95.)  Counsel then moved the Ohio Supreme Court to voluntarily dismiss Petitioner's appeal, writing:

> [A]ppellant has re-filed a motion seeking the same relief in the trial court, as directed by the Sixth District Court of Appeals' decision appealed herein. Hence, dismissal of this jurisdictional appeal is necessary for the trial court to have jurisdiction over the motion.  Therefore, appellant respectfully requests this appeal be dismissed.

(*Id.* at 298.)  On October 27, 2020, the Ohio Supreme Court granted the motion to withdraw and dismissed the entire appeal.  (*Id.* at 301.)  *State v. Valois-Perez*, 155 N.E.3d 941 (Ohio 2020).

What counsel filed later in the trial court was a motion for relief based on the supposed failure of the trial court to make a pre-plea colloquy regarding immigration consequences, as required by Ohio Rev. Code § 2943.031(A).  That motion was not predicated on an alleged deficiency in his trial counsel's performance.

### F.  Motion to Vacate Under Section 2943.031

On September 10, 2020, Coble filed a motion to vacate the guilty plea and conviction on the ground that the trial court failed to disclose that a conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  Ohio Rev. Code § 2943.031(A).  (Doc. No. 11-1 at 329-35.) In that motion, counsel asserted that no recording or transcript of the plea and sentencing hearing existed, which presumptively means that the required colloquy did not occur.  Moreover, counsel argued that a written disclosure like the one in Petitioner's plea document did not satisfy the statute.  (*See id.*)

12

G.  **Discovery of a Recording and Transcript**

On November 16, 2020, the State and Coble jointly filed a motion in the trial court to

have a court reporter transcribe the audio recording of the July 2017 plea and sentencing hearing.

On December 10, 2020, the transcript was filed.

The transcript of the plea and sentencing hearing confirmed that the trial court had,

indeed, had a colloquy with Petitioner that satisfied Section 2943.031.  (Doc. No. 11-1 at 372.)

On January 25, 2021, counsel filed a one-sentence motion to withdraw his September 10,

2020 motion to vacate.  On February 3, 2021, the trial court granted that motion to withdraw.

(*Id.* at 343.)

H.  **Return to Ohio Supreme Court**

On or around March 12, 2021, Petitioner filed *pro se* a Notice of Appeal with the Ohio

Supreme Court along with a motion for leave to file a delayed appeal.  (Doc. No. 11-1 at 302-

25.)  On May 11, 2021, the Ohio Supreme Court denied Petitioner's motion and dismissed his

appeal.  (*Id.* at 327.)  Two justices dissented from the denial of the motion for leave to file a

delayed appeal.  *State v. Valois-Perez*, 167 N.E.3d 975, 976 (Ohio 2021).

I.  **Habeas Petition**

On June 7, 2021, Petitioner filed his petition for a writ of habeas corpus in this Court.

(Doc. No. 1.)  He presents the following grounds in support of the petition:

> **GROUND ONE:** Trial counsel's failure to grasp the basis of the charges and the
> potential defenses constituted deficient counsel under the 6th Amendment to the
> U.S. Const.
>
> **Supporting Facts:** Petitioner's version of events that he gave to the detectives
> the day of the shooting was that it was accidental.  Trial counsel immediately
> filed a not guilty by reason of insanity.  Petitioner asserts that, but for the
> ineffective assistance of counsel, he would not have entered a guilty plea and
> would have proceeded to trial.

13

\* \* \*

**GROUND TWO:** The court of appeals violated Appellant's Sixth Amendment right to the U.S. Constitution when overruling his motion to withdraw Plea, Crim. R. 32.1.

**Supporting Facts:** The court of appeals did not examine Petitioner's motion to withdraw plea under either prong of *Strickland v. Washington* or the Sixth Amendment. Petitioner's motion to withdraw was based on claim of trial counsel's performance being deficient. Rather the court ruled it had complied with Criminal Rule 11, which was not the correct means by which to address a claim of ineffective assistance of counsel.

\* \* \*

**GROUND THREE:** Appellate counsel's performance was deficient in violation of his Sixth Amendment right to the U.S. Const.

**Supporting Facts:** Counsel's action was deficient because it denied him [petitioner] the opportunity to present his claim to the Supreme Court of Ohio. Counsel filed an application for dismissal of the case no. 2020-0993, which the Supreme Court of Ohio granted October 27, 2020.

(Doc. No. 1 at 5-8).[5]

## II.    Law and Analysis

### A.    Standard of Review

"Federal habeas review of [a] state court's decision is governed by the standards established by the AEDPA." *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). The AEDPA provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[5] Two motions by Petitioner to expand the habeas record to include a few additional documents from the criminal state court proceedings were granted. (*See* Doc. Nos. 9, 12, 14, 15; *see also* Doc. No. 11-1.)

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254. "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

To prevail under the AEDPA, Petitioner "must meet two requirements. First, he must show that his incarceration violates the Constitution or federal law. And second, [he] must prove that the [Ohio] Court of Appeals made an 'unreasonable' error of law or fact." *James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023) (citations omitted). However, this Court does "not consider on habeas review a state court's determination of state law." *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008). That is because "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

### B. Statute of Limitations

The AEDPA contains a one-year limitations period, subject to events that may have delayed its commencement or tolled its running.

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by

15

State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondent's frontline argument is that the limitations period expired in 2018.

Assuming in [Petitioner's] favor, he was sentenced via a nunc pro tunc entry on September 13, 2017.  Thereafter, he had thirty days (until October 13, 2017) to appeal to the Ohio Court of Appeals but he did not do so.  In fact, he took no further action on his case until more than another year had passed and he moved to withdraw his guilty plea on November 19, 2018.  By this time, the federal statute of limitations for habeas corpus had run, and his petition was time-barred. He did not file his federal habeas corpus petition by October 13, 2018.  In fact, he did not file it until May 28, 2021.  Absent any tolling events, the petition was time-barred by October 13, 2018.  No tolling events occurred.

(Doc. No. 11 at 66.)  Nonetheless, the Court credits Respondent for acknowledging why his own

frontline position is incomplete.

[O]n May 15, 2019, Petitioner's counsel filed a Motion for a Delayed Appeal of his July 25, 2017 conviction and sentence.  On June 19, 2019, the appellate court granted the motion for delayed appeal and consolidated the delayed appeal with appeal of denial of the motion to withdraw plea.  The court found that, under the unique circumstances of Petitioner's case (the hiring of a language interpreter by the court, which enabled counsel to discover more appellate issues), Petitioner met the requirements of [Ohio] App. R. 5(A).  Further, on September 10, 2019, the appellate court found that the July 25, 2017 conviction/sentence, and the September 18, 2017 nunc pro tunc were not final orders because Valois-Perez was not found guilty in the order.  The trial court issued a revised judgment entry on September 12, 2019, that was a final appealable order.   Accordingly, Petitioner may raise a counter-argument to Respondent's as to when  the conviction became final, when the limitations period began to run, and when it

16

became final.

(*Id.* at 69-70 n.5 (citations omitted).)

The Sixth Circuit recognizes that a motion for delayed appeal under Ohio law will toll the limitations period, so long as the petitioner complies with all filing requirements. That is true even if the motion ultimately is denied. *See Board v. Bradshaw*, 805 F.3d 769, 776 (6th Cir. 2015); *Kares v. Morrison*, 77 F.4th 411, 418 (6th Cir. 2023), *reh'g denied*, No. 21-2845, 2023 WL 8687255 (6th Cir. Nov. 28, 2023).  Petitioner here filed a motion for delayed appeal, which the Ohio Court of Appeals granted.  (*See* Doc. No. 11-1 at 157-59, 162-66.)  Petitioner later filed a motion for delayed appeal in the Ohio Supreme Court which was denied – but with two Justices dissenting.  *State v. Valois-Perez*, 163 Ohio St. 3d 1416, 167 N.E.3d 975, 976 (Ohio May 11, 2021).  Respondent has not developed a persuasive argument to treat Petitioner's motions for delayed appeal as outside the scope of the holdings in *Board* and *Kares*.  And so the Court cannot hold that no tolling event occurred.

Notably, the trial court's revised final judgment memorializing both Petitioner's guilt and his sentence in one order was not entered until September 12, 2019 and journalized until September 13, 2019.  (*See* Doc. No. 11-1 at 230-33, 235-237.)  In these circumstances, Sixth Circuit case law arguably points to September 13, 2019 as the *earliest possible* date on which the federal habeas limitations period could commence.  *See generally In re Stansell*, 828 F.3d 412, 417 (6th Cir. 2016) ("That means it is a new judgment, which reopens challenges to any aspect of that judgment, whether related to the conviction, the sentence, or both.")  The Sixth Circuit follows "*Magwood*'s judgment-based approach."  *King v. Morgan*, 807 F.3d 154, 157 (6th Cir. 2015) (applying *Magwood v. Patterson*, 561 U.S. 320 (2010)).  "As a matter of custom and usage . . . a judgment in a criminal case includes both the adjudication of guilt and the sentence.

Even when the only change in the state-court proceeding relates to the sentence, the new judgment will reinstate the conviction and the modified sentence." *Id.* at 157 (quotations and citations omitted).   The Sixth Circuit has held and reconfirmed that a revised state court judgment has the concomitant effect of restarting the habeas limitations clock.

> Although *King*'s holding was limited to second or successive petitions, in evaluating the net effect of [its] decision, the court noted that the decision may allow more habeas petitions because [t]he entry of a new judgment normally resets the statute-of-limitations clock under § 2244(d)(1)(A).  We agree with the *King* court's analysis.  The interpretation of "judgment" in *Magwood* and *King* applies with equal force to § 2244(d)(1)(A) and § 2254(a).  Accordingly, because "[t]he sentence is the judgment," *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quotation omitted), a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment.

*Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (quotations omitted).

Perhaps there may be ways to distinguish the revised final judgment ordered here by the Ohio Court of Appeals (Doc. No. 11-1 at 230-37) from the revised judgments in *Magwood*, *King*, *Stansell*, *Crangle* and their progeny.  But it is not this Court's role to supply those arguments for Respondent, who scarcely mentioned the revised judgment.  (Doc. No. 11 at 48, 70.)  Nor does Respondent argue how this Court should treat the revised judgment for purposes of the limitations defense.  (*See* Doc. No. 11.)

To conclude, Respondent's concession in Footnote 5 combined with the authorities mentioned above rule out (or at least cast doubt on) Respondent's suggestion that the limitations period expired in September or October 2018.  (*Compare* Doc. 11 at 66 *with id.* at 69-70 n.5.) And nowhere in the Return of Writ does Respondent ever suggest or analyze any *other* possible accrual or commencement date.  (*See* Doc. No. 11 at 64-69.)

The AEDPA statute of limitations is a defense, not a jurisdictional barrier.  *Day v. McDonough*, 547 U.S. 198, 205 (2006).  It is Respondent's burden to demonstrate that the

18

habeas limitations period expired and bars the petition before the Court.  *Griffin v. Rogers*, 308

F.3d 647, 653 (6th Cir. 2002).  Respondent has not met that burden, and so the statute of

limitations defense is overruled.

### C.    Procedural Default

Respondent does not carry his burden on the defense of procedural default.  Respondent

offers very little to assist the Court in identifying precisely when, where, and how Petitioner

purportedly defaulted.  Below is the entirety of Respondent's submission on that issue.

> D.    In the alternative, all three grounds are procedurally defaulted.
>
> All three grounds are procedurally defaulted because none has ever been fairly
> presented to the state courts. More specifically, none has ever been raised in the
> Ohio Supreme Court. (Exhibit 30, Memorandum in Support of Jurisdiction).
> Accordingly, each is procedurally defaulted and waived.
>
> Petitioner cannot show cause and prejudice or a miscarriage of justice to excuse
> the procedural defaults. He cannot blame ineffective assistance of counsel for
> the failure to raise the these [*sic*] claims in the Ohio Supreme Court because, as
> noted, he had no entitlement to counsel in that court. Accordingly, all three
> grounds are procedurally defaulted and should be dismissed

(Doc. No. 11 at 64.)

By way of background, a "federal habeas court will not review a claim rejected by a state

court 'if the decision of [the state] court rests on a state law ground that is independent of the

federal question and adequate to support the judgment.'"  *Beard v Kindler*, 558 U.S. 53, 55

(2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  This rule "applies to bar

federal habeas when a state court declined to address a prisoner's federal claims because the

prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment

rests on independent and adequate state procedural grounds."  501 U.S. at 729-30 (citing

*Wainwright v. Sykes,* 433 U.S. 72, 81, 87 (1977)).

One type of independent state ground is called procedural default.  "A procedural default is a 'critical failure to comply with state procedural law.'"  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021) (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997)).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 732.  This is an outgrowth of the long-established rule that "a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."  *Id.* at 731 (citing *Ex parte Royall,* 117 U.S. 241 (1886)).  Today the exhaustion requirement is codified in the AEDPA.  28 U.S.C. § 2254(b).

If a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner is claim, then that claim is procedurally defaulted.  *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000).  Or, as the Sixth Circuit has stated more recently, a "habeas claim is procedurally defaulted if and only if (1) the petitioner failed to comply with a state rule; (2) the state enforced the rule against the petitioner; and (3) the rule is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."  *Gibbs*, 12 F.4th at 550 (quotation omitted).  Regarding the need for the state court actually to have enforced a procedural rule, the Supreme Court teaches that "if the state court under state law chooses not to rely on a procedural bar in such circumstances, then there is no basis for a federal habeas court's refusing to consider the merits of the federal claim."  *Harris v. Reed*, 489 U.S. 255, 265 n.12 (1989).

"Procedural default is an affirmative defense that the respondent bears the burden of proving."  *Cowans v. Bagley*, 236 F. Supp. 2d 841, 871 (S.D. Ohio 2002); *see also Magouirk v. Phillips*, 144 F.3d 348, 357 (5th Cir. 1998) (holding that "the existence of a procedural default does not destroy the jurisdiction of the federal court" and that "procedural default is an affirmative defense").  In *Trest v. Cain*, 522 U.S. 87 (1997), the Supreme Court recognized that procedural default is normally a defense that the State is obliged to raise, preserve, and prove.  522 U.S. at 89 (citing *Gray v. Netherland,* 518 U.S. 152, 166 (1996)).[6]  The Seventh Circuit has held that a passing reference or undeveloped argument as to a procedural default by a state respondent is insufficient to establish that defense.  *See Holleman v. Duckworth*, 155 F.3d 906, 912 (7th Cir. 1998).  Practical considerations require a habeas respondent to be clear when establishing procedural default defenses.  It is incumbent upon a state respondent to specify which particular asserted procedural event(s) within state court records are relied upon in federal court as a defense to foreclose habeas review.

Respondent contends that none of the three grounds in the federal Petition was ever presented to the Ohio Supreme Court.  (Doc. No. 11 at  64.)  But the face of the court documents in question shows otherwise.

For example, Ground One of the federal Petition is "[t]rial counsel's failure to grasp the basis of the charges and the potential defenses constituted deficient counsel under the 6th Amendment to the U.S. [Constitution].  . . .  Petitioner asserts that, but for the ineffective

---

[6] Prior to the AEDPA, "exhaustion and procedural default defenses could be waived based on the State's litigation conduct."  *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *see also Granberry v. Greer*, 481 U.S. 129 (1987).  However, the Court recognizes that the AEDPA has eclipsed (at least some of) *Granberry* by providing that "a State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  28 U.S.C.A. § 2254(b)(3).

assistance of counsel, he would not have entered a guilty plea and would have proceeded to trial." (Doc. No 1 at 5.)  In a Notice of Appeal to the Ohio Supreme Court filed on August 12, 2020, Petitioner recited as Proposition of Law Three that "[t]rial counsel's performance was deficient because he failed to advise Appellant of potential jury instructions if Appellant elected to proceed to trial, in violation of Appellant's Sixth and Fourteenth Amendments rights under the U.S. Constitution." (Doc. No. 11-1 at 263.)  He followed that with an argument that the United States Supreme Court applied the *Strickland* test for ineffective assistance where a defendant relied on it to challenge his prior guilty plea. (*Id.* at 274.)  And just as Petitioner cited and explained to the Ohio Supreme Court, the United States Supreme Court has, indeed, held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The face of the relevant court filings shows that Petitioner raised the same Sixth Amendment *Strickland* claim in his trial court motion to withdraw his plea, in his consolidated appeal at the Court of Appeals, and in his appeal papers to the Ohio Supreme Court.

Now it is true that subsequently while his appeal application was pending, the appeal application was withdrawn by the attorney previously appointed to represent him in the Court of Appeals. (*See* Doc. No. 11-1 at 293-301.)  Notably, that attorney appeared in the Ohio Supreme Court *after* Petitioner had filed the appeal and articulated the grounds for it.

It is important to point out that the appellate attorney's withdrawal of the pending appeal application is not what Respondent raised as the procedural default for his defense.  Respondent predicated his defense instead on the assertion that Petitioner's claims in his federal habeas petition had never before been raised in the Ohio Supreme Court. (Doc. No. 11 at 64.)  As shown above, Respondent is mistaken in that respect.

22

Moreover, Respondent himself recognizes in the Return of Writ that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." (*Id.* at 11 n.4 (quoting *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) (citations omitted).) Respondent makes no argument as to why the Ohio Supreme Court's actions should be construed as being based on an adequate and independent state ground. *Cf. State v. Valois-Perez*, 167 N.E.3d 975, 976 (Ohio 2021). The United States Supreme Court has instructed that "when the adequacy and independence of any possible state law ground is not clear from the face of . . . the decision of the last state court," then "a federal court may address the petition." *Coleman*, 501 U.S. at 735.

For these reasons, Respondent has not carried his burden to show that procedural default bars this Court's consideration of the habeas petition. Accordingly, that defense is overruled.

**D.      Ineffective Assistance of Trial Counsel**

Because Respondent does not prevail on his two defenses, the Court considers the merits of Petitioner's claims for relief in the Petition. In doing so, the Court notes that "habeas is an extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system." *Rogers v. Mays*, 69 F.4th 381, 387-88 (6th Cir. 2023) (*en banc*), *cert. denied sub nom. Rogers v. Pounds*, No. 23-5964, 2024 WL 674902 (U.S. Feb. 20, 2024) (quotations and citations omitted).

Petitioner contends in Ground One that his trial counsel failed to grasp the basis of the charges and the potential defenses, which constituted deficient counsel under the Sixth Amendment. But for that ineffective assistance, Petitioner says he would not have entered a

guilty plea and would have proceeded to trial, where he would have pursued a jury instruction on voluntary manslaughter. (Doc. No. 1 at 5.)

At the outset the Court notes that the Sixth Circuit has rejected claims to unwind prior guilty pleas based on *post hoc* speculation about possible trial testimony or conjecture regarding how a trial might unfold. *See Clisby v. United States*, No. 19-4215, 2021 WL 5318338, at *2 (6th Cir. Nov. 16, 2021); *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016). "The Supreme Court has cautioned that '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded,' but 'should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020) (quoting *Lee v. United States,* 582 U.S. 357, 358 (2017)).

Petitioner further contends in Count Two that the Ohio Court of Appeals erred in its method of resolving his appeal from the trial court's denial of the motion to withdraw the guilty plea on Sixth Amendment ineffective assistance grounds. (Doc. No. 1 at 7-8.) Petitioner argues that the appellate court did not examine his motion to withdraw the guilty plea under either prong of *Strickland v. Washington* or the Sixth Amendment. (*Id.*) Grounds One and Two of the Petition both turn on the suggestion that trial counsel was ineffective because he failed to advise Petitioner to go to trial and therein request a voluntary manslaughter defense jury instruction.

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below

an objective standard of reasonableness," 466 U.S. at 687-688, and (2) that any such deficiency was "prejudicial to the defense," *id.,* at 692.

A state court's decision is "contrary to" clearly established federal law only if the state court "applies a rule that contradicts the governing law" as determined by Supreme Court precedent or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court's precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also White v. Woodall*, 572 U.S. 415, 419 (2014); *Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023), *cert. denied*, No. 23-444, 2024 WL 674729 (U.S. Feb. 20, 2024). A state court's decision is an "unreasonable application" of federal law only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Moss*, 62 F.4th 1011. Review of an ineffective assistance claim under the AEDPA is thus "doubly deferential" because it "gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

"[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Cullen*, 563 U.S. at 188. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 189 (emphasis in original; quotation omitted). "[T]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* (quoting *Strickland*, 466 U.S. at 689).

Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Cullen,* 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 688).  To demonstrate prejudice, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  In other words, he must show a "'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

Because the trial court and appellate court adjudicated the ineffective assistance of trial counsel claim on its merits, this Court may not grant the writ unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002)

A state court decision may survive AEDPA deference without specifically citing Supreme Court cases. *Early*, 537 U.S. at 8.  Where a state court cites only state law or state court precedents, that does not necessarily mean that the state court has misapplied or contradicted federal precedent.  *See Key v. Rapelje*, 634 F. App'x 141, 145-46 (6th Cir. 2015). Following *Early,* the Sixth Circuit has held that an imperfect analysis of a Sixth Amendment claim without discussion of federal cases by a state court did not mean that the state court

ignored the claim or otherwise violated Supreme Court precedent. *Smith v. Cook*, 956 F.3d 377, 386-88 (6th Cir. 2020). And even assuming state courts' application of federal law may be slightly flawed, that would not necessarily imply a contradiction or unreasonable application of Supreme Court precedent. *See Loza v. Mitchell*, 766 F.3d 466, 484 (6th Cir. 2014); *see also Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.

> To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
>
> A reasonable probability is a probability sufficient to undermine confidence in the outcome." To prevail on his ineffective-assistance claim, [Petitioner] must show, therefore, that there is a "reasonable probability" that he would have prevailed on his [voluntary manslaughter] defense had he pursued it. This [Petitioner] cannot do.

*Knowles v. Mirzayance*, 556 U.S. 111, 127-28 (2009) (quoting *Strickland,* 466 U.S. at 694).

In *Shimel*, the Sixth Circuit resolved an ineffective assistance of counsel claim seeking to withdraw a prior guilty plea. 838 F.3d at 688. The Court resolved that "claim on the prejudice prong because there can be no finding of ineffective assistance of counsel without prejudice." *Id.* at 698.

> In the Sixth Circuit, a petitioner "cannot make that showing merely by telling [the court] now that she would have gone to trial then if she had gotten different advice." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Hill*, 474 U.S. at 59). This is such a

case, as [petitioner] contends that her counsel was deficient for his failure to present a theory of self-defense.  "[I]n determining whether a defendant has shown prejudice, a court must predict whether correction of the deficient performance might have enabled the defendant to succeed at trial."  *Id.* at 538.

As explained below, Petitioner's theory here regarding voluntary manslaughter is like the self-defense theory in *Shimel*.  Like that case, here Petitioner has not established that a voluntary manslaughter charge would be available to him – much less that it was likely to succeed.

Here, the Ohio Court of Appeals reasoned that –

Appellant argued that his trial counsel was ineffective because he failed to advise him on the lesser-included offense of voluntary manslaughter and that there was enough evidence in the case to demonstrate serious provocation by the victim.

* * *

Accepting appellant's account of the incident as true, it does not meet the elements of voluntary manslaughter which requires that the state prove that a defendant caused the death of another while under the influence of sudden passion or rage brought on by serious provocation.  R.C. 2903.03(A).  *Thus, the instruction was neither warranted nor was counsel ineffective by failing to advise appellant on its availability.*  Further, the trial court did not err in denying the motion without first conducting a hearing.

(Doc. No. 11-1 253-56 (emphasis added).)

For the following reasons, Petitioner has not shown – and on the facts in his affidavit cannot show – a reasonable probability that he would even receive the voluntary manslaughter jury instruction, much less prevail on it.  Although the Ohio courts' opinions were not framed expressly as a two-pronged *Strickland* analysis, this Court reads those opinions as having honed in on the potentially dispositive issue of prejudice.  The trial court and appellate court both correctly concluded that voluntary manslaughter was a stretch at best – if not foreclosed as a matter of law.  In any event, it was by no means likely that had he gone to trial Petitioner would receive a voluntary manslaughter jury instruction from the trial court.  And it follows that this

Court cannot find it probable that the court and the jury would embrace that theory and convict Petitioner of voluntary manslaughter in lieu of murder or aggravated murder.

Contrary to Petitioner's view, voluntary manslaughter is not a lesser included offense to murder.  Voluntary manslaughter is an inferior offense of murder because the former contains requires proof of additional mitigating elements.  *State v. Tyler*, 553 N.E.2d 576 (Ohio 1990); *State v. Deem*, 533 N.E.2d 294 (Ohio 1988); *Rhodes v. Brigano*, 91 F.3d 803, 807 (6th Cir. 1996).

Ohio's voluntary manslaughter statute provides in pertinent part:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . . .

Ohio Rev. Code § 2903.03(A).

An Ohio trial court may not omit a requested instruction, *if* such instruction is a correct, pertinent statement of the law *and if* it is appropriate to the facts at hand.  *See State v. Lessin*, 620 N.E.2d 72 (Ohio 1993).   A trial court inquires into the sufficiency of the evidence and is vested with discretion to determine whether sufficient evidence is presented at trial to require a particular jury instruction.  *See id.*; *State v. Mitts*, N.E.2d 522 (Ohio 1998).  Contrary to the assumption underlying Petitioner's Grounds One and Two, the fact that his testimony might support a voluntary manslaughter instruction does *not* guarantee that he will receive that instruction – much less that it would prevail.  The Ohio Supreme Court rejected "the erroneous impression that, whenever there is 'some evidence' that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given."  *Id.* at 275.  "That clearly never has been the law in this state, nor is it the law today."  *Id.*

> [A] defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support *both* an acquittal on the charged crime of murder *and* a conviction for voluntary manslaughter.

*State v. Shane*, 590 N.E.2d 272, 274 (Ohio 1992) (emphasis added).  In this case, Petitioner never argues or shows that under the anticipated evidence he could not be convicted for murder – as *Shane* requires.

Petitioner also has not shown a reasonable probability of success on voluntary manslaughter because neither his original motion, nor his appeal, nor his habeas Petition address both the objective and subjective showings necessary to establish the mitigating element.

> An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components.  In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied.  Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage.  It is only at that point that the . . . emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time . . . must be considered.

*Id.* at 276 (quotation omitted).  Petitioner provides no legal analysis to satisfy the objective threshold or to show why an Ohio court likely would agree and give the instruction.

Even if the instruction is given, that does not mean the jury will agree to an inferior charge in lieu of murder or aggravated murder.  The determination of what is reasonable provocation is a question of fact for the factfinder.  *Shane*, 590 N.E.2d 272.  Petitioner's argument in support of voluntary manslaughter relies on assumptions about the evidence and speculation as to how the court and jury will .

Courts have rejected claims of ineffective assistance where attorneys did not (or tried and could not) secure a voluntary manslaughter instruction.  *E.g., State v. Norman*, 2004-Ohio-226, 2004 WL 97657, at *3 (Ohio Ct. App. 2004); *State v. Jones*, 2003-Ohio-4397, 2003 WL

21981989, at *2 (Ohio Ct. App. 2003) (collecting authorities).  "Failure to request instructions on lesser[ ] offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."  *State v. Griffie*, 658 N.E.2d 764, 765 (Ohio 1996); *see also State v. Clayton*, 402 N.E.2d 1189, 1191 (Ohio), *cert. denied,* 449 U.S. 879 (1980).  And Ohio courts are not permitted to "infer a defense failure to investigate from a silent record."  *State v. Were*, 890 N.E.2d 263 (Ohio 2008).

Under Ohio law, extraordinary circumstances must exist before the granting of a post-sentencing motion to withdraw can be justified.  *State v. Massey*, 86 N.E.3d 30, 32 (Ohio Ct. App. 2017).  "The rationale for this high standard is 'to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence is unexpectedly severe.'"  *State v. Robinson*, 2012-Ohio-5824, 2012 WL 6110472, at *2 (Ohio Ct. App. 2012).  This Court has no authority to question or to circumvent state law designed to ensure finality with respect to guilty pleas.

Moreover, "[a] criminal defendant does not have a constitutional right to an evidentiary hearing on a motion to withdraw a guilty plea."  *Dunlap v. Warden*, No. 2:21-cv-05849, 2022 WL 16950956, at *4 (S.D. Ohio Nov. 15, 2022); *cf. Armstrong v. Wainwright*, No. 19-3446, 2019 WL 5874623, at *2 (6th Cir. Oct. 8, 2019) (denying certificate of appealability for claim pertaining to a state trial court's failure to hold an evidentiary hearing and noting that petitioner "did not have a right to an evidentiary hearing with respect to his motion to withdraw his plea"); *McCloud v. Taylor*, 780 F.2d 1022, 1985 WL 13945 (6th Cir. 1985) (denying habeas relief for a state inmate who pleaded guilty and later sought to withdraw the plea).

31

Petitioner has not shown a reasonable probability that a voluntary manslaughter strategy would have prevailed. Nor has he shown constitutionally deficient performance by trial counsel in not pursuing that strategy. Nor has he established a constitutional violation by being held to his plea agreement. Grounds One and Two of the Petition are overruled. Petitioner is not entitled to a writ of habeas corpus on the ground that he wrongfully deprived of a guilty plea withdrawal due to the ineffective assistance of counsel.

### E. Ineffective Assistance of Appellate Counsel

Petitioner contends in Ground Three of the Petition that his appellate counsel's performance was deficient in violation of his Sixth Amendment right to counsel. Petitioner points mainly to appellate counsel's withdrawal of the Ohio Supreme Court appeal taken by Plaintiff. (Doc. No. 1 at 8-9.)

"[P]rejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.' * * * [T]his final presumption applies even when the defendant has signed an appeal waiver" as part of a guilty plea. *Garza v. Idaho*, 586 U.S. --, 139 S. Ct. 738, 744 (2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)); *see also Webb v. Streeval*, No. 18-5988, 2019 WL 4554530, at *2 (6th Cir. June 11, 2019). The Sixth Circuit "presume[s] prejudice in an ineffective-assistance claim if a defendant can establish a reasonable probability that, but for counsel's deficient performance, he would have appealed." *Haji-Mohamed v. United States*, No. 21-5733, 2024 WL 776116, at *7 (6th Cir. Feb. 26, 2024). This rule applies to any ineffective assistance of appellate counsel claim based on the October 2020 withdrawal of Petitioner's pending discretionary appeal application. *Cf. Whiteside v. United States*, No. 20-6144, 2021 WL 1400908, at *2 (6th Cir. Feb. 12, 2021)

("*Garza* did not announce a new rule of constitutional law, and the Supreme Court has not held that it is retroactively applicable to cases on collateral review.").

Cognizant of the body of law set forth above, this Court nonetheless overrules Ground Three as moot.  In this Petition, and in the circumstances set forth in the underlying state court record (Doc. No. 11-1), Ground Three is framed to excuse any arguable procedural default of the claim underlying Grounds One and Two.  *See generally Edwards v. Carpenter,* 529 U.S. 446, 451, (2000).

When appellate counsel withdrew Petitioner's pending application for appeal in the Ohio Supreme Court, she did so in service of a claim that there had not been a proper pre-plea colloquy regarding immigration consequences.  (Doc. No. 11-1 at 297-99.)  What is plain from the record is what arguably was "lost" by her withdrawal of the pending appeal application requesting Ohio Supreme Court review.  (*Id.* at 308.)  Petitioner's Proposition of Law Three sought a reversal of the trial court's and the appellate court's rejection of Petitioner's Sixth Amendment ineffective assistance claim.  (*Id.* at 263.)  That claim is the basis upon which Petitioner seeks to withdraw his prior guilty plea and go to trial in hopes of a verdict of voluntary manslaughter.  (*See id.*

Arguably, if the Court found a procedural default and if the Court found cause and prejudice from deficient performance by appellate counsel, then that could be an excuse to any arguable procedural default of the Sixth Amendment claim.  Here, Ground Three is surplusage because this Court has reached and resolved on the merits both Grounds One and Two and the constitutional claims therein.  Accordingly, Ground Three in the Petition is denied and dismissed as moot.

### III. <u>Conclusion</u>

Petitioner's objections are OVERRULED. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is DENIED. The case is DISMISSED. The Court certifies that there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

**Date:** March 15, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE